UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
LAREDO DIVISION

| | | |
|---|---|---|
| BRADLEY K AERY, *et al*, | § | |
| | § | |
| Plaintiffs, | § | |
| VS. | § | CIVIL ACTION NO. 5:12-CV-68 |
| | § | |
| OGM LAND COMPANY LTD.; dba V&B | § | |
| RESOURCES, *et al*, | § | |
| | § | |
| Defendants. | § | |

## MEMORANDUM OPINION AND ORDER

Defendants removed this case to this Court based on an allegation of diversity jurisdiction under 28 U.S.C. § 1332(a). Before the Court is Plaintiffs' Motion to Remand (Dkt. No. 4), in which Plaintiffs challenge the removing Defendants' improper joinder claim. After reviewing all the filings and the applicable law, the Court finds that the removing Defendants have failed to meet their heavy burden of establishing improper joinder. Accordingly, the Court hereby **GRANTS** Plaintiffs' motion (Dkt. No. 4) and **REMANDS** this case to state court. Defendants' Motion to Dismiss (Dkt. No. 8) is **DENIED AS MOOT**.

### I.  Legal Standard

With limited exceptions, "[a] federal district court has removal jurisdiction over an action if the district court could have exercised original jurisdiction over it." *Elam v. Kansas City S. Ry Co.*, 635 F.3d 796, 803 (5th Cir. 2011) (citing 28 U.S.C. § 1441(a)). Federal courts have original jurisdiction in cases where the amount in controversy exceeds $75,000 and which are between, *inter alia*, "citizens of different States." 28 U.S.C. § 1332(a)(1).

The doctrine of improper joinder "constitutes a narrow exception to the rule of

complete diversity." *McDonal v. Abbott Laboratories*, 408 F.3d 177, 183 (5th Cir. 2005).  To remove a case that ostensibly involves non-diverse parties based on diversity, the defendant "bears a heavy burden of proving that the joinder of the in-state party was improper." *Smallwood v. Illinois Cent. R.R. Co.*, 385 F.3d 568, 574 (5th Cir. 2004).  Improper joinder can be established two ways: "(1) actual fraud in the pleading of jurisdictional facts, or (2) inability of the plaintiff to establish a cause of action against the non-diverse party in state court." *Travis v. Irby*, 326 F.3d 644, 647 (5th Cir. 2003) (citation omitted).  Only the second part of the improper joinder analysis is before the Court.

To succeed on a showing of improper joinder, the removing defendant must demonstrate that "there is no possibility of recovery by the plaintiff against an in-state defendant, which stated differently means that there is no reasonable basis for the district court to predict that the plaintiff might be able to recover against an in-state defendant." *Smallwood*, 385 F.3d at 573.  To predict whether the plaintiff has a reasonable basis for potentially recovering against a non-diverse defendant, the Court conducts a "Rule 12(b)(6)-type analysis, looking initially at the allegations of the complaint to determine whether the complaint states a claim under state law against the in-state defendant." *Id.*  Removal jurisdiction is determined by analyzing the claims in the state court complaint at the time of removal.[1]  *Cavallini v. State Farm Mut. Ins. Co.*, 44 F.3d 256, 265 (5th Cir. 1995).

The Court uses the state court pleading standard to test the sufficiency of Plaintiffs' claims against the non-diverse Defendants.[2]  The Texas "fair notice" pleading standard is

---

[1] Plaintiffs and Defendants provide lengthy briefing on whether the Court may look to Plaintiffs' First Amended Complaint to determine the propriety of the joinder of in-state Defendants OGM Land Company, Ltd. d/b/a V&B Resources ("V&B"), and Enduring Resources, LLC ("Enduring").  Despite the lengthy briefing on this topic, the debate is of little consequence because the Court finds that Plaintiff has made a viable claim for breach of contract against Enduring in the Original Complaint.

[2] This was not raised in the briefs, but the Court notes the trend of district courts using the more lenient Texas pleading standard and adopts the same view.  *See Espinoza v. Companion*

far more lenient than the federal pleading standard, as Texas courts looks to "whether the opposing party can ascertain from the pleading the nature and basic issues of the controversy and what testimony will be relevant." *Horizon/CMS Healthcare Corp. v. Auld*, 34 S.W.3d 887, 896 (Tex. 2000) (citation omitted).

Ordinarily, if a plaintiff survives the Rule 12(b)(6)-type analysis, the court finds no improper joinder and concludes the inquiry. *Smallwood*, 385 F.3d at 573. In certain cases, however, when a plaintiff "has misstated or omitted discrete facts that would determine the propriety of joinder," the court is permitted to "pierce the pleadings" to determine "the presence of discrete and undisputed facts that would preclude plaintiff's recovery against the in-state defendant." *Id.* at 573–74. Affidavits and other post-removal filings may be considered "to the extent that the factual allegations clarify or amplify the claims actually alleged." *Griggs v. State Farm Lloyds*, 181 F.3d 694, 700 (5th Cir. 1999). The Fifth Circuit has cautioned that "[a]ttempting to proceed beyond this summary process carries a heavy risk of moving the court beyond jurisdiction and into a resolution of the merits" instead of the "simple and quick exposure" to the chances of plaintiff's claim against an in-state defendant necessary to determine improper joinder. *Smallwood*, 385 F.3d at 574.

When conducting the improper joinder analysis, the Court must resolve any ambiguities of state law, unchallenged factual allegations, and contested issues of fact in the light most favorable to the plaintiff. *Irby*, 326 F.3d at 649. The Court does "not determine whether the plaintiff will actually or even probably prevail on the merits of the claim, but look[s] only for the possibility that the plaintiff might do so." *Guillory v. PPG Indus., Inc.*, 434 F.3d 303, 309 (5th Cir. 2005). "[A]ny doubt about the propriety of removal

---

*Commercial Ins. Co.*, No. 7:12-CV-494, 2013 WL 245032, at *1 (S.D. Tex. 2013); *Edwea, Inc. v. Allstate Ins. Co.*, No. 4:10-CV-2970, 2010 WL 5099607, at *5–6 (S.D. Tex. 2010).

must be resolved in favor of remand." *Gasch v. Hartford Accident & Indem. Co.*, 491 F.3d 278, 281–82 (5th Cir. 2007).

## II.     Facts & Procedural Posture

Plaintiffs Bradley K. Aery and Randi G. Aery ("Plaintiffs") conveyed an oil and gas lease ("Lease") to OGM Land Company, Ltd. d/b/a V&B Resources ("V&B") on December 17, 2009.  V&B later assigned its interest to Enduring Resources, LLC ("Enduring").

Enduring and Plaintiffs entered into an agreement regarding a water well to be drilled on the property.  Enduring then assigned its interest to Talisman Energy USA, Inc. ("Talisman").  After Enduring's assignment to Talisman, the well was drilled and both Talisman and Enduring "refuse[d] to recognize the agreement related to the water well."  Talisman also allegedly failed to pay Plaintiffs their proper royalty.

Plaintiffs are residents of Texas.  Defendants V&B and Enduring are also residents of Texas.  Talisman, however, is an out-of-state corporation.

Plaintiffs initiated this litigation by filing their Original Complaint in the156th Judicial District Court of McMullen County, Texas.  Dkt. No. 1, Attach. 1 at 7.  They seek damages in connection with breach of contract, statutory violations, and trespass; they also request a declaratory judgment and an accounting.  Defendants timely removed this case to federal court, on the basis that V&B and Enduring, both Texas citizens, are improperly joined to this action and should not be allowed to defeat diversity jurisdiction.  Plaintiffs amended their complaint after removal, then filed the Motion to Remand.  Defendants responded to the motion and later filed a motion to dismiss.

## III.    Analysis

In Plaintiffs' Original Complaint, they assert, *inter alia*, a claim against Enduring for damages due to "various breaches of the Lease and the various other agreements

between Plaintiffs and Enduring Resources and Talisman." Dkt. No. 1, Attach. 1 at 11. Plaintiffs allege that Enduring agreed to run electricity to the water well that Enduring would drill on the property. *Id.* at 8. Plaintiffs and Enduring agreed that the water well would be jointly owned by Enduring and Plaintiffs for the life of the Lease. *Id.* Plaintiffs also agreed to allow Enduring to use a pond to store "frac"[3] water pursuant to this agreement. They allege that Enduring did, in fact, drill a water well on the property but now "refuse to recognize the agreement related to the water well." *Id.* at 9. Absent this agreement, Plaintiffs allege that Enduring was prohibited from using Plaintiffs' ponds pursuant to the Lease. *Id.* at 9.

Under Texas law, the elements of a claim for breach of contract are "(1) the existence of a valid contract; (2) performance or tendered performance by the plaintiff; (3) breach of the contract by the defendant; and (4) damages sustained as a result of the breach." *B & W Supply, Inc. v. Beckman,* 305 S.W.3d 10, 16 (Tex. App. 2009). Defendants do not dispute that Plaintiffs have alleged a claim against Enduring for breach of contract under the "fair notice" pleading standard. Rather, the question is whether or not there is any possibility of recovery against Enduring for this alleged breach.

The Parties agree that ¶ 8 of the Lease provides Enduring an express release from liability of obligations arising after assignment. *See Seagull Energy E & P, Inc. v. Eland Energy, Inc.*, 207 S.W.3d 342, 347 (Tex. 2006) (explaining that "a party who assigns its

---

[3] According to the Environmental Protection Agency, hydraulic fracturing is "a well stimulation process used to maximize the extraction of underground resources." During this "fracking" process, fluids, including water and other additives, are pumped into a geologic formation at high pressure. After the fluids are pumped into the formation, they rise to the surface as flowback. This flowback can be stored in tanks or pits prior to disposal or recycling. *Hydraulic Fracturing Background Information*, ENV. PROT. AGENCY, http://water.epa.gov/type/groundwater/uic/class2/hydraulicfracturing/wells_hydrowhat.cfm (last visited March 19, 2013).

contractual rights and duties to a third party remains liable unless expressly or impliedly released by the other party to the contract."); *see also GOM Shelf, LLC v. Sun Operating Ltd. P'ship*, No. 4:06-CV-3444, 2008 WL 901482, at *11 (S.D. Tex. March 31, 2008) (finding assignors liable when there was no express release in an operating agreement). Paragraph 8 of the Lease provides, in part:

> If Lessee transfers its interest hereunder in whole or in part Lessee shall be relieved of all obligations *thereafter* arising with respect to the transferred interest, and failure of the transferee to satisfy such obligations with respect to the transferred interest shall not affect the rights of the Lessee with respect to any interest not so transferred.

Thus, the question is whether Enduring's obligations pursuant to the agreement arose before or after assignment.

Defendants contend that the obligations to perform pursuant to Plaintiffs' agreement with Enduring did not arise until the water well was drilled, which was after assignment. Therefore, Defendants argue that Enduring was expressly released from those obligations. Plaintiffs respond that the obligations arose at the time Enduring made the agreement, which was before Enduring transferred its interest to Talisman. Plaintiffs argue that these pre-existing obligations were not discharged by assignment.

At the heart of the dispute between Plaintiffs and Defendants is whether or not drilling the water well is a condition precedent to Enduring's other obligations in the agreement. The Texas Supreme Court has defined conditions precedent to an obligation to perform as "those acts or events, which occur subsequently to the making of a contract, that must occur before there is a right to immediate performance and before there is a breach of contractual duty." *Hohenberg Bros. Co. v. George E. Gibbons & Co.,* 537 S.W.2d 1, 3 (Tex. 1976) (citations omitted). In contrast, a covenant "is an agreement to act or refrain from acting in a certain way." *Solar Applications Eng'g, Inc., v. T.A. Operating Corp.*, 327

S.W.3d 104, 108 (Tex. 2010) (citation omitted). "The question of reasonable time to perform an obligation, absent a written contract fixing the time specifically, is one of fact." *Szanto v. Pagel*, 47 S.W.2d 632, 636 (Tex. App. 1932).

In Texas, courts are "hesitant to construe any paragraph or obligation as a condition precedent; rather the presumption is towards a covenant." *Texas City Ref., Inc. v. Universal Oil Products Co.*, 681 S.W.2d 303, 305 (Tex. App. 1984). To determine whether a particular provision is a condition precedent, "the intention of the parties must be ascertained; and that can be done only by looking at the entire contract." *Criswell v. European Crossroads Shopping Ctr., Ltd.*, 792 S.W.2d 945, 948 (Tex. 1990) (citations omitted).

Thus, the Court "pierces the pleadings" to determine whether any misstated or omitted discrete facts determine the propriety of joinder, and the Court finds that Defendants have not demonstrated any discrete, undisputed fact that precludes Plaintiffs' recovery. *Smallwood*, 385 F.3d at 573. For this summary inquiry, the Court considers factual allegations in the affidavits to the extent that they "clarify or amplify" the breach of contract claim alleged against Enduring in the Original Complaint. *Griggs*, 181 F.3d at 700. Neither Plaintiff Bradley K. Aery's affidavit nor the affidavit offered by Defendants provides insight into when Enduring was required to perform. Therefore, Defendants have not carried their heavy burden of proving that Plaintiffs have no possibility of recovering against Enduring.

In Plaintiff Bradley K. Aery's affidavit, he elaborates on the agreement between Enduring and Plaintiffs, which they allege was breached in the Original Complaint. A representative of Enduring approached Plaintiffs to negotiate the placement of a water well on Plaintiffs' property, claiming that V&B had assigned its interest to Enduring. Dkt. No. 4

at 9. Plaintiffs agreed, *inter alia*, to let Enduring drill a water well in a particular location, and Enduring agreed to "run a water line approximately 8,000 feet from the water well to [Plaintiffs'] house located on the property." *Id.* Additionally, Plaintiffs gave Enduring permission to utilize the water well to pump water into the surface ponds to use for fracking operations. *Id.* Enduring also agreed to reimburse Plaintiffs for their expenses if Plaintiffs constructed a power pole and ran electricity to the water well. *Id.* at 10. Plaintiffs allowed the well to be drilled and incurred the expenses of running electricity and constructing a power pole pursuant to this agreement, but Enduring never constructed the water line to Plaintiffs' house or reimbursed Plaintiffs for these expenses. *Id.*

Defendants submit the affidavit of Darin A. Zanovich, the manager of Talisman. Zanovich establishes that Enduring assigned its interest in the Lease on December 8, 2010. Dkt. No. 7, Attach. 1 at 1. Zanovich also explains that Enduring drilled and completed the water well on behalf of Talisman after Enduring's assignment to Talisman. *Id.* at 2.

Neither affidavit provides evidence of (1) when exactly the agreement related to the water well occurred; (2) when Plaintiffs incurred the expenses related to running electricity and constructing the power pole; (3) when the reimbursement for those expenses was due; or (4) when the construction of the water line was due. Plaintiffs establish that the agreement occurred before assignment. All Defendants establish is that the water well was drilled after Enduring assigned its interest, which may not be relevant to when the obligation to construct the water line or to reimburse Plaintiffs arose.

On these facts, the Court cannot determine when the obligation to construct the water line or to reimburse Plaintiffs arose. The obligations to construct a water line to Plaintiffs' house or to reimburse the Plaintiffs for costs associated with setting up electricity may have arisen before assignment, and Defendants fail to prove otherwise.

Because of the presumption against conditions precedent and the Court's obligation to construe all ambiguities in favor of Plaintiffs, the Court finds that there is a possibility that Plaintiffs may recover against a non-diverse defendant. Thus, the Court finds that Defendants have failed to meet their heavy burden of proving improper joinder.

## IV. Conclusion

For the reasons described above, the Court finds that Defendants have not met their burden of demonstrating that Enduring, a non-diverse defendant, is improperly joined. Accordingly, the Court finds that it lacks jurisdiction because the parties are not completely diverse and hereby **GRANTS** Plaintiffs' Motion to Remand (Dkt. No. 4). Therefore, this case is **REMANDED** to the 156th Judicial District Court of McMullen County, Texas, in accordance with 28 U.S.C. § 1447(c). Defendants' Motion to Dismiss (Dkt. No. 8) is **DENIED AS MOOT**. The Clerk of the Court is directed to mail a certified copy of this Memorandum Opinion and Order to the clerk of the 156th Judicial District Court of McMullen County, Texas.

It is so **ORDERED**.

**SIGNED** this 20th day of March, 2013.

_____
Marina Garcia Marmolejo
United States District Judge